IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WHITE OAK POWER
CONSTRUCTORS,
        Plaintiff,

v.

MITSUBISHI HITACHI POWER
SYSTEMS AMERICAS, INC.,
        Defendant.

Civil Action No. 3:17-cv-00355-JAG

## OPINION

In 2013, Mitsubishi Hitachi Power Systems Americas, Inc., agreed to provide certain materials to Old Dominion Electric Cooperative to build a natural gas power plant in Maryland. Under the parties' contract—called the Equipment Purchase Agreement ("EPA")—Mitsubishi promised to provide two gas turbines, associated generators, and related components for the power plant project. The EPA contained several liquidated damages provisions under which Mitsubishi would pay Old Dominion for delays in document deliveries, equipment deliveries, and substantial completion. On June 2, 2014, Old Dominion entered into an Engineer, Procure, and Construct Contract with White Oak Power Constructors to build the plant. That same day, Old Dominion, Mitsubishi, and White Oak entered into an Assignment, Assumption, and Consent Agreement, which transferred most of Old Dominion's rights to White Oak. In essence, therefore, the EPA became a contract between White Oak and Mitsubishi.

Mitsubishi and White Oak encountered various issues and delays throughout the course of the contract. On May 9, 2017, White Oak filed this lawsuit against Mitsubishi, alleging breach of contract and seeking, in part, liquidated damages. Mitsubishi intends to introduce evidence of White Oak's actual damages to challenge the enforceability of the EPA's liquidated damages

provisions. Mitsubishi contends that Virginia law precludes White Oak from enforcing several of the provisions because the damages resulting from the alleged delays far exceed the amount of the actual damages White Oak suffered. White Oak has moved for partial summary judgment on the enforceability of the liquidated damages provisions, asserting that Mitsubishi has waived its right to challenge the provisions and, in any event, that Virginia law precludes Mitsubishi from challenging the provisions based on White Oak's actual damages measured after contract formation.

Because Virginia law requires courts to assess the enforceability of liquidated damages provisions based on the actual damages anticipated at the time of contract formation, the Court will grant White Oak's partial motion for summary judgment.

# I. BACKGROUND

## A. Liquidated Damages Provisions

The EPA contains three liquidated damages provisions: (1) Late Document Delivery Liquidated Damages, (2) Late Equipment Delivery Liquidated Damages, and (3) Late Substantial Completion Liquidated Damages. The Court will summarize each provision in turn.

### 1. Late Document Delivery Liquidated Damages

Section 3 of the EPA governs the document delivery requirements. Section 3.2, the Late Document Delivery Liquidated Damages provision, provides that "[White Oak] will suffer losses if certain documents . . . are not delivered to [White Oak] by or on the scheduled dates . . . set forth in the Document Delivery Schedule." (Dk. No. 287, at 18.) The EPA, therefore, explains that

> [Mitsubishi] will be liable for, and will pay to [White Oak], as liquidated damages and not as a penalty, an amount equal to one thousand Dollars ($1,000) per Day for each Day that the delivery of a separately identifiable document constituting a Key

2

Document is delayed beyond the specified delivery dates therefor ("**Late Document Delivery Liquidated Damages**").

(*Id.*) The EPA further provides that

> [t]his sum represents a reasonable endeavor by the Parties to estimate a fair and reasonable compensation for the foreseeable losses and expenses [White Oak] will incur as a result of late delivery of Key Documents (including losses relating to schedule delays, costs to regain schedule, and lost profits from schedule unable to be regained) and shall be [White Oak's] sole remedy and [Mitsubishi's] sole liability for late delivery of Key Documents. *The Late Document Delivery Liquidated Damages shall be applicable and payable regardless of the actual losses and expenses incurred by [White Oak] in the event of [Mitsubishi's] failure to submit Key Documents beyond the specified delivery dates.* . . . [Mitsubishi's] liability for Late Document Delivery Liquidated Damages shall not exceed, in the aggregate, an amount equal to two percent (2%) of the Contract Price.

(*Id.* (emphasis added).)

### 2. *Late Equipment Delivery Liquidated Damages*

Section 6 of the EPA sets forth guaranteed delivery dates for each of the gas turbine components. Section 6.2.1, the Late Equipment Delivery Liquidated Damages provision, provides that,

> [i]f the Delivery of any component of a Unit is delayed past the Guaranteed Delivery Date therefor, [White Oak] will suffer large financial losses due to, among other things, resulting costs of accelerating installation work to regain lost schedule, and loss of revenue due to the delayed availability of generation capacity of the Facility.

(*Id.* at 22.) Thus, if Mitsubishi does not deliver any of the components of the turbine units by the guaranteed delivery date, Mitsubishi

> shall be liable to [White Oak] and shall pay, as liquidated damages . . . :

> Days of Delay
> Days 1-15:          thirty thousand Dollars ($30,000) per Day
> Days 16-30:         forty thousand Dollars ($40,000) per Day
> Days 31 onwards:    fifty thousand Dollars ($50,000) per Day

(*Id.*)  The provision limits the damages to $100,000 per day and 15 percent of the contract price

"in the aggregate."  (*Id.*)

> In § 6.2.2(d),
>
> [t]he Parties acknowledge and agree that the Late Equipment Delivery Liquidated
> Damages are reasonable liquidated damages (and are not a penalty), considering
> the resulting costs of accelerating installation work to regain lost schedule and loss
> of revenue to [White Oak] due to the delayed availability of generation capacity of
> the Facility and other losses that [White Oak] will sustain in the event of delayed
> delivery of components of the Units. The Parties agree that such fixed amounts are
> a fair and reasonable estimate of such losses as [White Oak] may reasonably
> anticipate from such delays and ... shall be [White Oak's] sole remedy and
> [Mitsubishi's] sole liability for late delivery of components of the Units,
> *and ... that the Late Equipment Delivery Liquidated Damages shall be applicable*
> *regardless of the actual losses sustained by [White Oak] in the event of any such*
> *delays.*

(*Id.* at 23 (emphasis added).)

### 3. *Late Substantial Completion Liquidated Damages*

Section 8 of the EPA governs substantial and final completion of the project. Section 8.2.1,

the Late Substantial Completion Liquidated Damages provision, provides that

> if, due in whole or in part to deficiencies, faults or defects in a Unit or the actions
> or omissions of [Mitsubishi] or its Personnel, Substantial Completion has not been
> achieved by the Guaranteed Substantial Completion Date, then [Mitsubishi] will
> pay to [White Oak] the following amounts ("**Late Substantial Completion**
> **Liquidated Damages**") for each Day after the Guaranteed Substantial Completion
> Date that Substantial Completion is not achieved due in whole or in part to
> deficiencies, faults[,] or defects in a Unit or the actions or omissions of [Mitsubishi]
> or its Personnel: fifty thousand Dollars ($50,000) per Day, for Days 1-30, and one
> hundred fifty thousand Dollars ($150,000) per Day for Days 31 and onward.

(*Id.* at 33.)  The provision limits the Late Substantial Completion Liquidated Damages to 15

percent of the contract price.  The parties agreed

> that the Late Substantial Completion Liquidated Damages are reasonable liquidated
> damages (and are not a penalty), considering the losses and expenses (including
> without limitation loss of revenues) that [White Oak] will incur if Substantial
> Completion is delayed beyond the Guaranteed Substantial Completion Date. The
> Parties agree that such fixed amounts are a fair and reasonable estimate of such

losses and expenses that [White Oak] may reasonably anticipate from such a failure and shall be [White Oak's] sole remedy and [Mitsubishi's] sole liability for failure to meet the Guaranteed Substantial Completion Date, and *that the Late Substantial Completion Liquidated Damages shall be applicable and payable regardless of the actual losses sustained by [White Oak] in the event of such a failure.*

(*Id.* at 34 (emphasis added).)

### B. Alleged Damages

Various delays occurred over the course of the power plant project. White Oak attributes some of those delays to Mitsubishi and contends that Mitsubishi owes White Oak $15,500,000 in Late Equipment Delivery Liquidated Damages, $1,200,000 in Late Substantial Completion Liquidated Damages, and $240,000 in Late Document Delivery Liquidated Damages.[1]

Mitsubishi's Affirmative Defense No. 2 ("Second Affirmative Defense") asserts that

[t]he liquidated damages sought by [White Oak] constitute an unenforceable penalty as the liquidated damages being claimed are grossly in excess of the actual damages, if any, incurred by [White Oak]. Similarly, [Mitsubishi] has not waived any ability to dispute or contest the enforceability of the liquidated damages provision. Merely because a party enters into a contract containing a liquidated damages provision does not prevent that party from later litigating the enforceability of the application of the liquidated damages clause where the claimed liquidated amount is grossly in excess of actual damages.

(Dk. No. 6, at 16.) Mitsubishi, therefore, intends to present evidence of White Oak's actual damages at trial to challenge the enforceability of the Late Substantial Completion Liquidated Damages provision and the Late Equipment Delivery Liquidated Damages provision.

---

[1] White Oak originally sought $2,100,000 in Late Document Delivery Liquidated Damages but now seeks $240,000. Mitsubishi does not challenge the enforceability of the Late Document Delivery Liquidated Damages Provision to the extent that White Oak seeks $240,000.

## II. **DISCUSSION**[2]

### *A. Actual Damages*

Courts in Virginia will enforce liquidated damages provisions "[w]hen the actual damages contemplated at the time of the agreement are uncertain and difficult to determine with exactness and when the amount fixed is not out of all proportion to the probable loss." *Taylor v. Sanders*, 233 Va. 73, 75, 353 S.E.2d 745, 746-47 (1987). But when "the damage resulting from a breach of contract is susceptible of definite measurement (as when the breach consists of failure to pay a sum of money) or where the stipulated amount would be grossly in excess of actual damages," courts will construe liquidated damages provisions as an unenforceable penalty. *Id.* at 75, 353 S.E.2d at 747. Courts must construe a liquidated damages provision based on "the intent of the parties as evidenced by the entire contract viewed in light of the circumstances under which the contract was made." *Id.* The party challenging the provision bears the burden of proving that it is unenforceable. *O'Brian v. Langley Sch.*, 256 Va. 547, 551, 507 S.E.2d 363, 365 (1998).

White Oak's motion for partial summary judgment presents a narrow issue: whether courts may consider the damages actually sustained by a party as a result of a contract breach when deciding if liquidated damages required by a contract "grossly exceed" a party's actual damages.[3]

---

[2] Summary judgment becomes appropriate when the movant establishes that no genuine dispute of any material fact exists and the party is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). If a court finds that "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict," the court must deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[3] Mitsubishi largely agrees with the facts set forth by White Oak but contends that the amount of damages White Oak actually sustained grossly exceeds the damages it allegedly incurred as a result of project delays. That dispute only becomes relevant if the Court considers the damages that White Oak incurred after contract formation. But the Court must first decide

6

White Oak argues that Virginia law requires the Court to apply a prospective approach, considering the probable actual damages as contemplated by the parties at the time of contract formation. Mitsubishi contends that the Court may also apply a retrospective approach, viewing the reasonableness of the provision in light of the damages sustained once the alleged breach occurred.

The Virginia Supreme Court applied a retrospective approach three decades ago in *301 Dahlgreen Ltd. Partnership v. Board of Supervisors*, 240 Va. 200, 396 S.E.2d 651 (1990). There, the parties entered into a contract for water and sewer service connections. The plaintiff paid a 25 percent deposit to the defendant for water and sewer availability but then decided to sell that availability to a new buyer. The new buyer sent a check to the defendant to cover the deposit, and the plaintiff asked the defendant to return its deposit. The defendant refused to accept the new buyer's check to cover the deposit and only returned half of the plaintiff's deposit pursuant to a forfeiture provision in the parties' contract.

The court first noted that Virginia law requires courts to enforce liquidated damages provisions "[w]hen the actual damages contemplated at the time of the agreement are uncertain and difficult to determine with exactness and when the amount fixed is not out of all proportion to the *probable* loss." *Id.* at 202-03, 396 S.E.2d at 653 (quoting *Taylor*, 233 Va. 73, 75, 353 S.E.2d 745, 746-47 (1987)) (emphasis added) (alteration in original). The court further explained that "when the damages resulting from the breach are susceptible of definite measurement or when the agreed amount would be grossly in excess of actual damages, courts usually construe such an agreement to be an unenforceable penalty." *Id.* at 203, 396 S.E.2d at 653   Applying a retrospective approach, the court then held that the forfeiture provision "appear[ed] to be [an unenforceable]

---

whether it can consider those damages at all.  Thus, no dispute of material fact exists as to this threshold question.

penalty" because the defendant had sustained no damages as a result of the sale. *Id.* at 203, 396 S.E. 2d at 653.

Several cases have relied on *301 Dahlgreen* to the extent that it considered the damages the enforcing party suffered after the breach when assessing the enforceability of the liquidated damages provision.[4]   Cases decided after *301 Dahlgreen*, however, clarify that Virginia law requires courts to apply a prospective approach when considering the enforceability of a liquidated damages provision.

For example, four years after deciding *301 Dahlgreen*, the Virginia Supreme Court considered the enforceability of a forfeiture provision in a real estate contract. *See Brooks v. Bankson*, 445 S.E.2d 473, 248 Va. 197 (1994).  After deciding that the provision amounted to a liquidated damages provision, it considered whether the down payment—the amount due under the contract in the event of default—was out of proportion with the seller's probable loss.  The court affirmed the trial court's decision to enforce the contract based on the actual damages contemplated at the time of contracting.   Notably, the dissenting justice also applied the prospective approach, disagreeing with the majority because the sum was "grossly in excess of the Sellers' *prospective actual damages* for the loss." *Id.* at 211, 445 S.E.2d at 481 (Whitting, J., concurring in part and dissenting in part) (emphasis added).

---

[4] *See Bennett Air Conditioning, Inc. v. Warren Mfg. Co.*, 23 F.3d 399 (4th Cir. 1994) (per curiam); *New Tides LLC v. Cortez Mgmt. Corp.*, No. CL02-74, 2006 Va. Cir. LEXIS 443, at *1-2 (Cir. Ct. May 3, 2006); *Toepfer Const. Co. v. Abramson Family P'ship*, No. 156055, 1998 WL 972149, at *6 (Va. Cir. Ct. Mar. 25, 1998); *cf. Doral Bank PR v. Fed. Home Loan Mortg. Corp.*, 477 F. App'x 31, 39-40 (4th Cir. 2012) (holding a liquidated damages provision unenforceable because it greatly exceeded both the non-breaching party's damages following the breach and a reasonable forecast of its damages at the time of contract formation).

8

More recently, in *Boots, Inc. v. Singh*, the Virginia Supreme Court again focused on the reasonableness of a liquidated damages provision based on the damages contemplated at the time of the agreement. 274 Va. 513, 518, 649 S.E.2d 695, 698 (2007) ("[U]nder the rule recognized in our cases, a liquidated damages clause is invalid only when the actual damages contemplated *at the time of the agreement* are shown to be certain and not difficult to determine or the stipulated amount is out of all proportion to the actual damages."). There, the plaintiff suffered no damages as a result of the breach. Nevertheless, the court enforced the provision in part because the defendant did not establish that the parties could determine damages at the time of the contract and "offered nothing to show that the amount of the deposit would be out of all proportion to any probable loss." *Id.* at 518, 649 S.E.2d at 698. Moreover, the court would not speculate that, at the time the parties signed the contract, the parties could have determined with certainty that the plaintiff would not have suffered a loss.[5]

Mitsubishi has failed to cite to any Virginia Supreme Court case decided after *301 Dahlgreen* that applied a retrospective approach.[6] Indeed, *Brooks* and *Boots*—both decided after

---

[5] Other cases have also adopted this prospective approach when applying Virginia law. *See Old Dominion Elec. Co-op. v. Ragnar Benson*, No. 3:05-cv-34, 2006 WL 2854444, at *57 (E.D. Va. Aug. 4, 2006); *Ameritech Const. Corp. v. Cummings*, 66 Va. Cir. 328 (2005); *Bel-Aire, Inc. v. RB Trexlertown, LLC*, 68 Va. Cir. 108, 114 (2005); *Baistar Mech., Inc. v. Bill Casper Golf, LLC*, No. 141781, 2015 WL 10990120, at *5 (Va. Oct. 22, 2015); *see also Doral Bank PR*, 477 F. App'x at 47 n.14 (Davis, J., dissenting); *see also* 24 Samuel Willison & Richard A. Lord, *A Treatise on the Law of Contracts* § 65:17 (4th ed. 2019 & Supp. 2020); *cf. Comstock Potomac Yard, L.C. v. Balfour Beatty Constr., LLC*, 694 F. Supp. 2d 468, 484, 488 (E.D. Va. 2010).

[6] Mitsubishi relies on two post-*301 Dahlgreen* Virginia Supreme Court cases. *See Gordonsville Energy, L.P. v. Va. Elec. & Power Co.*, 257 Va. 344, 512 S.E.2d 811 (1999); *O'Brian v. Langley Sch.*, 256 Va. 547, 552, 507 S.E.2d 363, 366 (1998). But those cases did not consider the enforceability of liquidated damages provisions under either a prospective or retrospective approach. Instead, those cases considered whether a party waived the ability to challenge a liquidated damages provision. Thus, neither case supports Mitsubishi's position that Virginia law allows courts to apply a retrospective approach.

*301 Dahlgreen*—only applied a prospective approach to analyzing liquidated damages provisions. Thus, the above review of relevant case law demonstrates that courts applying Virginia law must consider the actual damages contemplated at the time of contract when determining the reasonableness of a liquidated damages provision. Moreover, the fact that courts must focus on the intent of the parties based on the circumstances at the time of contract formation further supports applying the prospective approach. *See Taylor*, 233 Va. at 75, 353 S.E.2d at 747. Accordingly, Mitsubishi may not challenge the liquidated damages provision based on the damages White Oak suffered after the alleged delays occurred.[7]

### B. Late Document Delivery Liquidated Damages

Mitsubishi concedes that it is liable to White Oak for $240,000 in late document delivery liquidated damages. (*See* Dk. No. 301, at 11-12; *see also* Dk. No. 284, at 31-32.) But it argues that it is entitled to a setoff, as alleged in its counterclaims against White Oak. Because Mitsubishi concedes liability, the Court will grant summary judgment in the amount of $240,000 in late document delivery liquidated damages. The parties have not moved for summary judgment on Mitsubishi's counterclaims, and Court takes no position on the merits of those claims.[8]

---

[7] Mitsubishi's Fourth Affirmative Defense, as clarified by Mitsubishi's arguments in its response to the motion for summary judgment, challenges the liquidated damages provisions using a retrospective approach. Accordingly, the Court need not reach the question of whether Mitsubishi waived the right to challenge the provisions based on actual damages. In any event, although the EPA does not use the word "waive," the plain language of the contract establishes that the Mitsubishi agreed to pay liquidated damages "regardless of the actual losses and expenses incurred by" White Oak. (Dk. No. 287, at 18, 23, 34); *see Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 179, 788 S.E.2d 237, 244 (2016). The parties, represented by counsel, knowingly and voluntarily agreed to the terms of this provision. (Dk. No. 287, at 64; Dk. No. 287-3, at 5); *see Gordonsville Energy*, 257 Va. at 355-56, 512 S.E.2d at 818 ("If the party being charged with relinquishment of a right had knowledge of the right and intended to waive it, the waiver will be enforced."). Thus, even if the Court applied the retrospective approach, Mitsubishi could not challenge the provisions based on White Oak's actual damages.

[8] Mitsubishi's arguments focus on White Oak's damages based on a retrospective analysis. Because the Court must apply the prospective approach when assessing liquidated damages

### III. **CONCLUSION**

Because the Court can only consider the potential actual damages the parties contemplated at the time of contract formation and Mitsubishi concedes liability for the late document delivery liquidated damages, the Court grant White Oak's motion for partial summary judgment.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 22 June 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

provisions, it need not decide whether Mitsubishi's experts have sufficiently opined about the damages White Oak actually suffered following the alleged delays. Mitsubishi, however, also appears to argue that its conduct did not trigger the liquidated damages provision because it did not delay project completion. This motion only asks the Court to decide whether Mitsubishi may challenge the liquidated damages provisions using evidence of the damages White Oak actually suffered after the alleged delays. Thus, the Court will not decide whether Mitsubishi's conduct triggered the liquidated damages provisions in the first place.